**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

**JAESYN EVANS**
1605 Taylor Ave.
Fort Washington, MD 20744,

*individually, and on behalf of all others similarly situated*,

Plaintiff,

v.

**KELLY & ASSOCIATES INSURANCE GROUP, INC.**
1 Kelly Way
Sparks, MD 21152,

*c/o Steven I. Batoff, Esq.*
*909 Saint Paul Street*
*Baltimore, MD 21202*

Defendant.

Case No. 8:25-cv-1902

**CLASS ACTION COMPLAINT**

JURY DEMAND

## CLASS ACTION COMPLAINT

Plaintiff, Jaesyn Evans, brings this Class Action Complaint, against Defendant Kelly & Associates Insurance Group, Inc. ("Kelly Benefits" or "Defendant") and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, members, and/or other related entities, and upon personal knowledge as to his own actions, and information and belief as to all other matters, allege as follows:

## NATURE OF ACTION

1. This action arises from the public disclosure of the confidential and private Personally Identifiable Information ("PII") of Plaintiff and Class Members, which was in Defendant's possession and exposed during a cyberattack on Kelly Benefits' systems that began

on or around December 2024. This Data Breach resulted from Defendant's collective failure to adequately safeguard that information.

2. According to Defendant, the PII unauthorizedly disclosed in the Data Breach includes Class members' names and Social Security numbers.

3. Kelly Benefits is a company that provides employee-benefit management services to its clients.

4. Defendant failed to undertake adequate measures to safeguard the PII of Plaintiff and the proposed Class Members.

5. Although Defendant purportedly discovered the Data Breach in December of 2024, they failed to immediately notify and warn current and former patients, with Kelly Benefits waiting until April of 2025 to provide written notice to Plaintiff and the proposed Class.

6. As a direct and proximate result of Defendant's failure to protect the sensitive PII of current and former Benefits Recipients—and to promptly and fully notify them of the Data Breach—Plaintiffs and the proposed Class Members have suffered significant harm and damages, warranting class-wide relief.

**PARTIES**

7. Plaintiff Jaesyn Evans is a natural resident and citizen of Maryland.

8. Defendant Kelly Benefits is a is a corporation organized under the state laws of Maryland with its principal place of business located in Sparks, Maryland.

**JURISDICTION & VENUE**

9. This Court has original jurisdiction over this action under the Class Action Fairness Act 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class member is a citizen of a state that is diverse from Defendant's citizenship.

10. This Court has personal jurisdiction over Defendant because Kelly Benefits' principal places of business is in Maryland, and the Defendant does a significant amount of business in Maryland.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant has their principal places of business located in this District, and a substantial part of the events giving rise to this action occurred in this District.

**FACTUAL BACKGROUND**

12. Defendant Kelly Benefits is a company that provides employee benefits administration and management services to its clients.

13. Upon information and belief, Kelly Benefits serves as a third-party service provider to Plaintiff's employer, managing employee benefits and maintaining PII of Plaintiff and the proposed Class Members.

14. In the course of providing these services, Kelly Benefits collects and stores the PII of Plaintiff and the proposed Class Members on its information technology systems. This information includes, but is not limited to, names and Social Security numbers.

15. When collecting such PII, Defendant represents—either expressly or implicitly—that it will exercise reasonable care to protect and safeguard this information from unauthorized access or disclosure.

16. None of the purposes for which Defendant may disclose Benefits Recipients' PII without authorization include the Data Breach which came to pass.

17. Despite its stated commitments to data security, Defendant failed to implement and maintain reasonable industry-standard practices for protecting Benefits Recipients' PII and did not prevent the unauthorized access and disclosure of Plaintiff's and the proposed Class Members' sensitive information in the Data Breach.

**A. *The Data Breach***

18. According to Defendant, beginning in or around December 2024, Kelly Benefits suffered a cyberattack on its information technology systems by an unauthorized threat actor. This attack resulted in the unauthorized access, disclosure, and exfiltration of the PII of Benefit Recipients—including Plaintiff and the proposed Class Members—such as their names and Social Security numbers.

19. Despite the severity of the breach, Defendant failed to notify affected current and former Benefit Recipients for over four months. It was not until April 2025 that Kelly Benefits provided written notice to Plaintiff and the Class regarding the unauthorized disclosure of their PII.

20. On or about April 21, 2025, Kelly Benefits began sending written notice of the Data Breach to affected current and former Benefits Recipients, including Plaintiff, and the proposed Class Members.

21. The Data Breach Notice stated:

> Kelly & Associates Insurance Group, Inc. ("Kelly Benefits") which provides benefit enrollment services to its customers… writes to inform you of a recent incident that may impact some of your information…
>
> **What Happened?** Kelly Benefits recently learned of suspicious activity within our environment… Our investigation determined our environment was subject to unauthorized access between December 12, 2024, and December 17, 2024, and certain files were copied and taken…
>
> **What Information Was Involved?** Kelly Benefits determined that the following information related to you was present on the impacted files: your name and Social Security number.

*See* Exhibit A.

22. In addition, in its Data Breach Notice, Kelly Benefits recommended that affected persons "remain vigilant against incidents of identity theft and fraud by reviewing your account statements and monitoring your free credit reports."[1]

23. Defendant' conduct, by acts of commission or omission, caused the Data Breach, including: Kelly Benefits' failures to implement best practices and comply with industry standards concerning computer system security to adequately safeguard patient PII, allowing PII to be accessed and stolen, and by failing to implement security measures that could have prevented, mitigated, or timely detected the Data Breach, and by failing to adequately train its employees on cybersecurity policies, enforce those policies, or maintain reasonable security practices and systems, resulting in the Data Breach; Kelly Benefits, undertook these data security measures and appropriate employee training, prior to providing Kelly Benefits with Plaintiff's and the Class Members' PII.

24. On information and belief, as more fully articulated below, Plaintiff and the members of the proposed Class Members' PII, was unauthorizedly disclosed to, and actually exfiltrated by, third-party cybercriminals in the Data Breach, has now or will imminently be posted to the Dark Web for public viewing and use, in the public domain, and/or utilized for criminal and fraudulent purposes and misuse.

**B.** ***Plaintiff Evans' Experience***

25. Plaintiff, Jaesyn Evans, was a Benefits Recipient of Kelly Benefits, receiving employee benefits through his employer.

26. Plaintiff's employer utilized Kelly Benefits for its benefits administration and management services.

---

[1] *Id.*

27. As a condition of receiving employee benefits, Plaintiff was required to provide his PII to his employer, which was then shared with Kelly Benefits in connection with the administration of those benefits. This included, but was not limited to, Plaintiff's name and Social Security number.

28. Plaintiff stores documents containing his PII in a safe and secure location and uses unique usernames and strong passwords for his online accounts.

29. In entrusting his PII to Kelly Benefits, Plaintiff reasonably believed that the company would adequately safeguard that information. Had Plaintiff known that Kelly Benefits failed to use reasonable data security measures, he would not have entrusted his PII to them.

30. On or about May 30, 2025, Plaintiff received a Data Breach Notice from Kelly Benefits, informing him that his PII—including his name and Social Security number—had been exfiltrated in the cyberattack.

31. As a direct and proximate result of the Data Breach caused by Kelly Benefits' failure to secure Plaintiff's PII, he has suffered and will continue to suffer injury-in-fact and damages. This includes the unauthorized disclosure of his sensitive information, which, based on the nature of the cyberattack, has likely been or imminently will be used for criminal purposes, sold for profit, or posted on the dark web.

32. Plaintiff has been forced to spend significant time and effort monitoring his financial and personal accounts, changing passwords, verifying the legitimacy of the Data Breach Notice, and taking additional precautions to protect himself against identity theft and misuse of his PII.

33. Plaintiff has also suffered a diminution in the value of his PII—a form of intangible property that he entrusted to Kelly Benefits solely for the purpose of receiving employee benefits.

34. Plaintiff has experienced ongoing anxiety and emotional distress due to the exposure of his PII in the Data Breach.

35. He fears for his financial safety and personal security and is uncertain about how his information may be used. This fear has caused emotional distress, including anxiety, embarrassment, sleep disruption, and stress. This is not a case of mere inconvenience; the emotional toll is real and legally cognizable.

36. Plaintiff was deeply disturbed by the nature of the breach and the realization that cybercriminals may have accessed his highly sensitive PII. He was also outraged by Kelly Benefits' four-month delay in notifying him of the breach.

37. As a result of the Data Breach, Plaintiff now faces a lifelong risk of identity theft, given that the compromised data includes information that cannot be changed.

38. Additionally, Plaintiff's sensitive PII remains in Kelly Benefits' possession without adequate safeguards in place, continuing to expose him to potential future harm.

### C. *Data Breach Was Reasonably Foreseeable*

39. Plaintiff and the proposed Class Members provided their PII to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with their obligations to keep such information confidential and secure from unauthorized access.

40. By failing to do so, Defendant put Plaintiff and Class Members at risk of identity theft, financial fraud, and other harms.

41. Defendant tortiously, or in breach of their implied contracts, failed to take the necessary precautions required to safeguard and protect the PII of Plaintiff and the Class Members from unauthorized disclosure. Defendant' actions represent a flagrant disregard of Plaintiff's and the other Class Members' rights.

42. Plaintiff and Class Members were the foreseeable and probable victims of Defendant' inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing PII and the critical importance of providing adequate security for that information.

43. According to the Identity Theft Resource Center's January 24, 2022, report for 2021, "the overall number of data compromises (1,862) is up more than 68 percent compared to 2020. The new record number of data compromises is 23 percent over the previous all-time high (1,506) set in 2017. The number of data events that involved sensitive information (Ex: Social Security numbers) increased slightly compared to 2020 (83 percent vs. 80 percent)."[2]

44. According to the ITRC's January 2023 report for 2022, "[t]he number of publicly reported data compromises in the U.S. totaled 1,802 in 2022. This represents the second highest number of data events in a single year and just 60 events short of matching 2021's all-time high number of data compromises."[3] In 2022, there were approximately 422 million individuals affected by cyberattacks.[4]

45. Moreover, of the 1,802 data breaches in 2022, ITRC reported that 1,560 involved compromised names, 1,143 involved compromised of Social Security Numbers, and 633 involved compromised dates of birth—types of PII included in the unauthorized disclosure in this Data Breach.[5]

---

[2] *See* "Identity Theft Resource Center's 2021 Annual Data Breach Report Sets New Record for Number of Compromises," Jan. 24, 2022, available at https://www.idtheftcenter.org/post/identity- theft-resource-center-2021-annual-data-breach-report-sets-new-record-for-number-of- compromises/ (last accessed Apr. 14, 2023).

[3] Identity Theft Resource Center, 2022 Data Breach Report, available at https://www.idtheftcenter.org/wp-content/uploads/2023/01/ITRC_2022-Data-Breach- Report_Final-1.pdf, pg. 7 (last accessed Jul. 3, 2023).

[4] *Id.*

[5] *Id.*

46. The increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant' industry. According to IBM's 2022 report, "[f]or 83% of companies, it's not if a data breach will happen, but when."[6]

47. Furthermore, Defendant were aware of the risk of data breaches because such breaches have dominated the headlines in recent years.

48. PII is of great value to hackers and cybercriminals, and the data compromised in the Data Breach can be used for a variety of unlawful and nefarious purposes, including ransomware and fraudulent misuse, and sale on the Dark Web.

49. PII can be used to distinguish, identify, or trace an individual's identity, such as their name, Social Security number, and medical records. This can be accomplished alone, or in combination with other personal or identifying information that is connected, or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.

50. Given the nature of the Data Breach, it was foreseeable that the compromised PII could be used by hackers and cybercriminals in a variety of different injurious ways. Indeed, the cybercriminals who possess the Class Members' PII can easily obtain Class Members' tax returns or open fraudulent credit card accounts in the Class Members' names.

**D. *Defendant Failed to Adhere to FTC Data Security Guidelines***

51. The Federal Trade Commission (FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

---

[6] IBM, "Cost of a data breach 2022: A million-dollar race to detect and respond," available at https://www.ibm.com/reports/data-breach (last accessed Apr. 14, 2023).

52. In 2016, the FTC updated its publication, *Protecting PII: A Guide for Business*, which establishes cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[7]

53. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[8]

54. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

[7] *See* Federal Trade Commission, October 2016, "Protecting Private information: A Guide for Business," available at https://www.bulkorder.ftc.gov/system/files/publications/2_9-00006_716a_protectingpersinfo-508.pdf (last accessed on Apr. 14, 2023).

[8] *Id.*

55. Kelly Benefits failed to properly implement basic data security practices widely known throughout the industry. Defendant' failure to employ reasonable and appropriate measures to protect against unauthorized access to patient PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

56. Defendant were at all times fully aware of their obligations to protect the PII of its current and former patients. Defendant were also aware of the significant repercussions that would result from their failure to do so.

**E. *Defendant Fail to Comply with Industry Standards***

57. Many industry and national best practices have been published and are widely used as a go-to resource when developing an institution's cybersecurity standards. The Center for Internet Security's ("CIS") CIS Critical Security Controls ("CSC") recommends certain best practices to adequately secure data and prevent cybersecurity attacks, including 18 Critical Security Controls of Inventory and Control of Enterprise Assets, Inventory and Control of Software Assets, Data Protection, Secure Configuration of Enterprise Assets and Software, Account Management, Access Control Management, Continuous Vulnerability Management, Audit Log Management, Email and Web Browser Protections, Malware Defenses, Data Recovery, Network Infrastructure Management, Network Monitoring and Defense, Security Awareness and Skills Training, Service Provider Management, Application Software Security, Incident Response Management, and Penetration Testing.[9]

58. In addition, the National Institute of Standards and Technology ("NIST") recommends well-established best practices to protect systems and infrastructure, including:

---

[9] *See* https://www.rapid7.com/solutions/compliance/critical-controls/ (last accessed Apr. 14, 2023).

- Controlling access to networks, computers, and devices by regulating who can log on and use them.
- Using security software to protect sensitive data;.
- Encrypting sensitive data, both at rest and in transit.
- Conducting regular backups of data.
- Keeping security software up to date, with automated updates where possible.
- Establishing formal policies for the secure disposal of electronic files and outdated devices.
- Providing cybersecurity training to all users of the organization's systems, helping them understand both their personal risks and their critical role in protecting organizational data.[10]

59. Upon information and belief, Kelly Benefits failed to meet the minimum standards of both the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, and other industry standards for protecting Plaintiff's and the proposed Class Members' PII.

[10] Understanding The NIST Cybersecurity Framework, https://www.ftc.gov/business-guidance/small-businesses/cybersecurity/nist-framework (last acc. Apr. 14, 2023).

### F. *Data Breach Resulted in Injury and Damages to Plaintiff and Class Members*

60. Plaintiff and members of the proposed Class have suffered injury and damages from the unauthorized disclosure of their PII in the Data Breach that can be directly traced to Kelly Benefits' failure to adequately protect that PII.

61. As stated above, in the Data Breach, unauthorized cybercriminals were able to access the Plaintiff's and the proposed Class Members' PII, which on information and belief is now being used or will imminently be used for fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale, causing widespread injury and damages.

62. The ramifications of Defendant's failure to keep Plaintiff's and the Class's PII secure are severe. Identity theft occurs when someone uses another's personal and financial information such as that person's name, account number, Social Security number, driver's license number, date of birth, or other information, such as addresses, without permission, to commit fraud or other crimes.

63. Because Defendant collectively failed to prevent the Data Breach, Plaintiff and the proposed Class Members have suffered, will imminently suffer, and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. These harms include: the exposure of their PII, including its publication on the Dark Web for fraudulent, criminal activity or sale; fraudulent misuse of their PII, such as the opening of fraudulent loans and cellular telephone accounts, and instances of identity theft and impersonation; increased exposure to malware and spam emails; the loss of the ability to control how their PII is used; the diminution in the value of their PII; the compromise and continued publication of their PII; out-of-pocket expenses associated with the prevention, detection, recovery, and remediation of identity theft or fraud; lost opportunity costs and lost wages associated with the time and effort spent addressing and mitigating the actual and potential consequences of the Data Breach, including

researching preventative and recovery measures; emotional distress; delays in receiving tax refunds; unauthorized use of stolen PII; and the ongoing risk to their PII, which remains in Defendant' possession and is vulnerable to further breaches so long as Kelly Benefits fails to implement adequate protective measures.

64. Furthermore, the Data Breach has placed Plaintiff and the proposed Class Members at an increased risk of fraud and identity theft.

65. Victims of identity theft face numerous risks, including fraudulent opening of financial accounts, loss of healthcare benefits through medical identity theft, unauthorized access to email and social media accounts, damage to credit scores, mortgage and deed fraud, theft of tax refunds, and exposure to public embarrassment. They often spend significant time and money restoring their identities, suffer emotional and psychological harm, and may experience repeated incidents of fraud. Their personal data can circulate on the Dark Web indefinitely, leading to persistent spam, and even identity theft of family members, including children and elderly parents.

66. The FTC recommends that identity theft victims take several costly steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, seeking a credit freeze, and correcting their credit reports.[11]

67. The time-consuming process recommended by the FTC and other experts is complicated by the vulnerable situations of Defendant' patients.

68. Identity thieves use stolen PII such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

---

[11] *See* https://www.identitytheft.gov/Steps (last accessed September 1, 2021).

69. Identity thieves can also use Social Security numbers to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information.

70. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's PII to police during an arrest—resulting in an arrest warrant being issued in the victim's name. That can be even more problematic and difficult to remedy for someone who already has a criminal record.

71. The value of sensitive information is axiomatic; one need only consider the value of Big Data in corporate America, or that the consequences of cyber theft include heavy prison sentences. Even the obvious risk to reward analysis of cybercrime illustrates beyond doubt that PII has considerable market value.

72. It must also be noted there may be a substantial time lag–measured in years– between when harm occurs versus when it is discovered, and also between when PII and/or financial information is stolen and when it is used.

73. PII and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

74. Where the most PPI belonging to Plaintiff and Class Members was accessible from Kelly Benefits' network, there is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiff

and the Class Members are at an increased risk of fraud and identity theft for many years into the future.

75. Thus, Plaintiff and the Class Members must vigilantly monitor their financial and medical accounts for many years to come.

76. Social Security numbers are among the worst kind of PII to be stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud.[12]

77. For example, the Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines. Such fraud may go undetected until debt collection calls commence months, or even years later. Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity.[13] Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

78. Moreover, it is not an easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Even then, a new Social Security number may not be effective, as "[t]he

[12] *See* U.S. Social Security Administration, "Identity Theft and Your Social Security Number," Publication No. 05-10064, July 2021, available at https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Feb. 25, 2023).
[13] *See id.*

credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[14]

79. This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[15]

80. Accordingly, the Data Breach has caused Plaintiff and the proposed Class Members a greatly increased risk of identity theft and fraud, in addition to the other injuries and damages set forth herein, specifically the imminent identity fraud and criminal fraudulent activity; lost time and efforts in remediating the impact of the Data Breach, and other injury and damages as set forth in the preceding paragraphs.

81. Defendant knew or should have known of these harms which would be caused by the Data Breach they permitted to occur, and Kelly Benefits should have strengthened its data systems accordingly.

## CLASS ACTION ALLEGATIONS

82. Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated (the "Class"):

> **All individuals whose personally identifiable information was accessed, compromised, or otherwise impacted as a result of the Data Breach, as identified by Defendant or its agents, affiliates, or representatives, including all**

---

[14] *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR, Brian Naylor, Feb. 9, 2015, http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-
millions-worrying-about-identity-theft (last accessed on September 1, 2021).

[15] *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, Tim Greene, Feb. 6, 2015, http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed on September 1, 2021).

**persons to whom Defendant sent, or caused to be sent, a notice regarding the Data Breach (the "Class").**

83. Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and Members of their staff.

84. Plaintiff reserves the right to amend or modify the Class definitions as this case progresses.

85. <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class consists of thousands of individuals whose sensitive data was compromised in the Data Breach.

86. <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. if Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' PII.

b. if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach.

c. if Defendant' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations.

d. if Defendant' data security systems prior to and during the Data Breach were consistent with industry standards.

e. if Defendant owed a duty to Class Members to safeguard their PII.

f. if Defendant breached their duty to Class Members to safeguard their PII.

g. if Defendant knew or should have known that their data security systems and monitoring processes were deficient.

h. if Defendant should have discovered the Data Breach sooner.

i. if Plaintiff and Class Members suffered legally cognizable damage as a result of Defendant' misconduct.

j. if Defendant' conduct was negligent.

k. if Defendant' breach implied contracts with Plaintiff and Class Members.

l. if Defendant were unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiff and Class Members.

m. if Defendant failed to provide notice of the Data Breach in a timely manner, and.

n. if Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

87. Typicality. Plaintiff's claims are typical of those of other Class Members because Plaintiff's information, like that of every other Class Member, was compromised in the Data Breach.

88. Adequacy. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

89. Predominance. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer system and unlawfully accessed in the same way. The common issues arising from Defendant' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

90. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

91. Defendant has acted on grounds that apply generally to the Class as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

92. Likewise, certification of particular issues under Rule 23(c)(4) is appropriate, as these claims involve discrete, common questions of fact and law, the resolution of which will materially advance the disposition of this case and serve the interests of all parties. These common issues include, but are not limited to:

a. if Defendant failed to timely notify the public of the Data Breach.

b. if Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII.

c. if Defendant' security measures to protect their data systems were reasonable in light of best practices recommended by data security experts.

d. if Defendant' failure to institute adequate protective security measures amounted to negligence.

e. if Defendant failed to take commercially reasonable steps to safeguard consumer PII; and

f. if adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

93. Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

**COUNT I** ***NEGLIGENCE***
**(On Behalf of Plaintiff and the Proposed Class)**

94. Plaintiff hereby repeats and incorporates by reference all preceding allegations contained in this Complaint as if fully set forth herein.

95. Plaintiff and the Class Members entrusted their PII to their employers, who entrusted the PII to Kelly Benefits to perform benefits management services.

96. Defendant owed to Plaintiff and Class Members a duty to exercise reasonable care in handling and using the PII in their care and custody, including implementing industry-standard

security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

97. Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant' failure to collectively adequately safeguard the PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PII—just like the Data Breach that ultimately came to pass.

98. Defendant owed to Plaintiff and Class Members a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

99. Defendant owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from said Defendant' inadequate security protocols. Defendant actively sought and obtained Plaintiff's and members of the Class's PII.

100. The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access their databases containing the PII—whether by a sophisticated cyberattack or otherwise.

101. PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and Class Members and the importance of exercising reasonable care in handling it.

102. Defendant breached their duties by failing to exercise reasonable care in supervising its agents, employees, contractors, vendors, and suppliers, and in handling and securing the PII of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff's and Class Members' injury-in-fact and damages.

103. Defendant further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class Members' injuries-in-fact.

104. As a direct, proximate, and traceable result of Defendant' negligence, Plaintiff has suffered or will imminently suffer injury-in-fact and damages, as set forth in the preceding paragraphs.

105. Defendant' breach of their duty to exercise reasonable care and negligence directly caused Plaintiff and Class Members tangible injuries and damages, including exposure and misuse of their PII (such as fraudulent loans, identity theft, and impersonation), increased malware and spam, loss of control over their PII, diminished value of their data, ongoing publication of their information, out-of-pocket expenses, and lost time and wages spent mitigating these harms.

106. As a result of the negligence of Defendant, Plaintiff and the Class Members are entitled to recover actual, compensatory, and punitive damages.

107. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) properly notify affected victims of the Data Breach (ii) strengthen their data security systems and monitoring procedures; (iii) submit to future annual audits of those systems and monitoring procedures; and (iv) provide adequate credit monitoring to all Class Members.

108. Unless restrained by this Court, Defendant' wrongful conduct will continue to cause irreparable harm to Plaintiff and the Class Members, as their PII remains vulnerable to unauthorized access and misuse indefinitely. Monetary damages alone cannot remedy the ongoing risk and exposure of their personal information.

**COUNT II NEGLIGENCE *PER SE***
***(On Behalf of Plaintiff Proposed Class)***

109. Plaintiff hereby repeats and incorporates by reference all preceding allegations contained in this Complaint as if fully set forth herein.

110. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and members of the Class's PII.

111. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, patients' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of the Defendant' duty to protect Plaintiff's and the members of the Class's sensitive PII.

112. Defendant violated their respective duties under Section 5 of the FTC Act a by failing to use reasonable measures to protect Plaintiff's and the Class's PII and not complying with applicable industry standards as described in detail herein. Defendant' conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damage that would result to patients in the event of a breach, which ultimately came to pass.

113. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that,

because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class Members.

114. Defendant had a duty to Plaintiff and the Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and the Class's PII.

115. Defendant breached its respective duties to Plaintiff and members of the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and members of the Class's PII.

116. Defendant' violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations including HIPAA constitutes negligence *per se*.

117. But for Defendant' wrongful and negligent breach of its duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

118. The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

119. Had Plaintiff and members of the Class known that Defendant did not adequately protect their PII, Plaintiff and members of the Class would not have entrusted Defendant with their PII.

120. As a direct result of Defendant's negligence per se, Plaintiff and the Class have suffered tangible injuries and damages, including exposure and misuse of their PII (such as fraudulent loans, identity theft, and impersonation), increased malware and spam, loss of control and diminished value of their data, ongoing publication of their information, out-of-pocket expenses, lost time and wages mitigating these harms, emotional distress, delayed tax refunds,

unauthorized use of stolen PII, and a continuing risk of further breaches and identity theft due to Defendant' failure to protect the data.

121. As a result of Defendant's negligence *per se*, Plaintiff and the Class Members are entitled to recover actual, compensatory, and punitive damages.

**COUNT III** ***THIRD-PARTY BENEFICIARY***
***(On Behalf of Plaintiff and the Proposed Class)***

122. Plaintiff hereby repeats and incorporates by reference all preceding allegations contained in this Complaint as if fully set forth herein.

123. Plaintiff and the proposed Class Members are intended third-party beneficiaries of contracts between Kelly Benefits and their respective employers, pursuant to which Kelly Benefits received, stored, and processed their PII in order to provide benefits management services.

124. These contracts were entered into for the benefit of employees like Plaintiff and the Class Members, who were the intended recipients of those services and whose PII was required to facilitate them.

125. Kelly Benefits breached its obligations under these contracts by failing to implement and maintain adequate security measures to protect Plaintiff's and Class Members' PII, resulting in the Data Breach.

126. Kelly Benefits further breached the implied covenant of good faith and fair dealing by mishandling the entrusted PII and failing to prevent unauthorized access and disclosure.

127. As a direct and proximate result of Kelly Benefits' breach, Plaintiff and the Class have suffered actual, compensable damages and are entitled to recover actual, consequential, and other appropriate relief.

**COUNT IV** ***UNJUST ENRICHMENT***
***(On Behalf of Plaintiff and the Proposed Class)***

128. Plaintiff hereby repeats and incorporates by reference all preceding allegations contained in this Complaint as if fully set forth herein.

129. This claim is pled in the alternative to the breach of contractual claim asserted in Count III.

130. Plaintiff and the Class Members conferred a benefit upon Defendant in the form of labor and by providing their PII to Defendant in order to receive benefits.

131. Defendant appreciated or had knowledge of the benefits conferred upon them by Plaintiff and the Class Members.

132. As a result of Defendant' conduct, Plaintiff and members of the Class suffered actual damages in an amount equal to the difference in value between the consideration for reasonable data privacy and security practices and procedures that Plaintiff and the Class Members provided, and the unreasonable data privacy and security practices and procedures that they received.

133. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the proposed Class Members' labor and/or other consideration and their PII because Defendant failed to adequately protect their PII. Plaintiff and the Class Members would not have provided their PII, nor used for Defendant' services, had they known Defendant would not adequately protect their PII.

134. Defendant should be required to disgorge all unjustly obtained profits into a common fund for the benefit of Plaintiff and the Class, as a result of its misconduct and the Data Breach.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in their favor and grant the following relief:

A. Certify this case as a class action, appoint Plaintiff as Class Representative, and appoint Plaintiff's counsel as Class Counsel;

B. Award compensatory, actual, exemplary, and punitive damages to Plaintiff and the Class, as permitted by law;

C. Award restitution and all other damages in an amount to be determined at trial;

D. Grant declaratory and other equitable relief necessary to protect the interests of Plaintiff and the Class;

E. Grant injunctive relief to prevent further harm to Plaintiff and the Class;

F. Award attorneys' fees and costs, as allowed by law;

G. Award prejudgment and post-judgment interest, as provided by law;

H. Grant such other and further relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 12, 2025

Respectfully submitted,

*_/s/ Hassan Zavareei_*

Hassan A. Zavareei (Bar No. 0207150001)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Ave. NW, Suite 1010
Washington, D.C. 20006
Tel. 202-973-0900
hzavareei@tzlegal.com

Sabita J. Soneji (*pro hac vice forthcoming*)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Tel. 510-254-6808
ssoneji@tzlegal.com

*Counsel for Plaintiff and the Proposed Class*